EPSTEIN et al. v. DRYFOOS.

(District Court, S. D. New York. December 31, 1914.)

1. PATENTS ⚖=45—EVIDENCE OF NOVELTY—COMMERCIAL SUCCESS.

In approaching the consideration of the patentable novelty of an article of wearing apparel, it is well, in a doubtful case, to weigh cautiously the influence of commercial utility, for, in addition to the merit of the product, many causes contribute to success, notably a nation-wide market, change of fashions, clever advertising, and good business methods.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 51–53; Dec. Dig. ⚖=45.]

2. PATENTS ⚖=328—VALIDITY AND INFRINGEMENT—SKIRT.

The Epstein & Epstein patent, No. 887,610, for a skirt or petticoat having the entire rear portion of the waistband formed of an elastic band inclosed in the body portion, claims 3 and 4, narrowly construed, and limited, as they must be, in view of the prior art and the proceedings in the Patent Office, held not infringed.

In Equity. Suit by William Epstein and Samuel Epstein against Milton M. Dryfoos for infringement of letters patent No. 887,610, for a skirt or petticoat, granted May 12, 1908, to William Epstein and Samuel Epstein. On final hearing. Decree for defendant.

Alan D. Kenyon, of New York City, for complainants.
Charles McC. Chapman and Fred H. Bowersock, both of New York City, for defendant.

MAYER, District Judge. [1] In approaching the consideration of the patentable novelty of an article of wearing apparel, it is well, in a doubtful case, to weigh cautiously the influence of commercial utility, for, in addition to the merit of the product, many causes contribute to success, notably a nation-wide market, change of fashions, clever advertising, and good business methods.

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[2] The "Eppo," as complainants call their petticoat, has undoubtedly proved a success. By its manufacture, complainants have developed a large business from modest beginnings, and have placed on the market a petticoat which women seem to like; but, as the testimony shows, other garments of this kind have also won the popular fancy—witness the "Klosfit."

These are the days, so the testimony amply shows, of thin outer garments. Wherefore the enterprising petticoat manufacturer must have in mind, not only a good fit, but also a smooth-appearing undergarment, not afflicted with varying colors, nor with gathers tending to crumple.

The Epsteins were not the first, however, to realize these essential requisites. Doubtless this problem antedates the file wrapper, but from the file wrapper it is apparent that the art advanced by little steps until, finally, Feuchtwanger (United States letters, No. 662,714, dated November 27, 1900) invented something really worth while.

"My invention," said Feuchtwanger, "relates to improvements in skirts; and the object of the same is to produce an underskirt which will fit neatly over the hips without wrinkling and be secured snugly about the waist. To accomplish this object, I construct my skirt of three parts, each of a different kind of material. The first part or lower skirt portion is of nonelastic material, the second or hip portion is of material with a medium modulus of elasticity, and the third portion or waistband is of material having a large modulus of elasticity."

This patent has been held valid in the Third Circuit and here. Greenwald Bros., Inc., v. Enochs, 183 Fed. 583, 106 C. C. A. 351; Greenwald Bros., Inc., v. La Vogue Petticoat Co. (S. D., per Sheppard, J.), affirmed on appeal 226 Fed. 448, —— C. C. A. ——.

Later (United States letters patent No. 855,885, dated June 4, 1907) Jacob Greenwald obtained a patent for a skirt with gores, stating:

"I am aware that heretofore skirts have been made, of which the upper portion was wholly composed of elastic fabric, such a garment being patented in United States letters patent No. 662,714, dated November 27, 1900, granted to Henry J. Feuchtwanger. One of the purposes of the present invention is to permit the use of relatively nonelastic material for the upper portion of a skirt, while still obtaining the advantages of smooth close fit characteristic of such patented skirts. Thus, in my improved garment, silk may be used for such upper portion; and yet the advantages of an elastic fabric at the important region may be obtained.

"I am also aware that it is not broadly new to insert elastic gores at the waist region in garments, or to employ elastic strips in such waist regions. I therefore do not claim the use of such devices individually."

It is thus apparent that the field of invention had been greatly narrowed, and that the dividing line between skilled workmanship and invention was becoming constantly thinner.

In this situation, complainants applied for their patent, and were put to the necessity of overcoming prior art references until they finally succeeded in having allowed to them (among others) the claims in suit which are as follows:

"3. A skirt or petticoat, comprising a body, and a waistband, the front portion of the waistband being inelastic and secured to the front portion of the said body, the *entire* rear portion of the waistband being elastic and

formed of an elastic band, the *entire* rear upper portion of the said body *inclosing* the said elastic band, and longitudinal rows of stitches securing the said band-*inclosing* portion to the said elastic band while the latter is in a stretched condition, the said upper front portion of the said body being plain or nongathered, and the *entire* upper rear portion of the said body adjacent to the said elastic waistband portion being gathered.

"4. A skirt or petticoat, comprising a body having a placket at one side thereof, and a waistband consisting of a front and a rear portion, the front portion being inelastic and secured to the upper front portion of the said body, beginning at the placket and reaching to the opposite side of the body, the said rear portion of the waistband being formed of an elastic band, and an integral extended portion of the rear of the said body, the said extended *body portion inclosing* the said elastic band and being secured thereto throughout the length of the elastic band and while the latter is in a stretched condition."

In claim 3 the limitation "entire" employed in each of lines 4 and 6 was deliberate, and was necessitated by the citations of prior art patents, and in the argument accompanying the amendment dated February 21, 1908 (see file wrapper), the applicants referred to the elastic extending "from the side placket clear across to the other side of the garment, so that, when the garment is placed in position, the entire rear portion of the waistband and the adjacent body portion stretches uniformly from hip to hip and thus allows the garment to hang properly, even if a very stout person uses the garment," thus emphasizing the limitation made in the third claim, as well as in the two preceding claims, not now in question. Then, in the same argument, the applicants particularly direct the examiner's attention to lines 6–16, page 4 of the specification, which correspond to lines 100 to 112, page 1 of the printed specification; the same being next to the last paragraphs above quoted from the specification of the patent in suit.

Regarding claim 4, in the same argument, it is stated that the structure of the reference (Crocker) is foreign to that of applicants, particularly as "the rear portion of applicants' waistband is formed of an elastic band and an integral extended portion of the body inclosing the elastic band and secured thereto throughout the length of the elastic band and while the latter is in a stretched condition," this quoted matter being the language of lines 59–64 inclusive, page 2 (in claim 4), of the patent.

The file wrapper history of claim 1 furnishes additional evidence of the limitations imposed by the prior art.

It must be concluded that the word "entire" meant what "entire" ordinarily means, and that "inclosing" meant to "envelop with surrounding material." (See Standard Dictionary definition of "enclose," and read also the specification with the claims.)

The result is that these claims (which are practically identical) must be strictly construed if the patent is to be sustained, and I confess I am sometimes reluctant to disturb the validity of a patent, where hard-working men have developed a business on the faith of it, if such a conclusion is unnecessary.

In assuming the patent to be good for the purposes of the case at bar, I have not considered as part of the prior art the Goggin skirt

for reasons stated at the trial (although I believe Goggin to be disinterested and truthful), nor have I considered the Wertheim, No. 857,968, and Gilson, No. 797,194, patents, which, I think, are relevant on the state of the art; but, to avoid any question, they have been eliminated and are really not necessary in this controversy.

The alleged infringing petticoats are four in number, illustrating two kinds of petticoat concededly sold by defendant. (Exhibits 3 and 4, and 5 and 6.)

In Exhibits 3 and 4, four elements of claim 3 are lacking as follows:

4. The entire rear portion of the waistband being elastic and formed of an elastic band.

5. The entire rear upper portion of the body inclosing the elastic band.

6. Longitudinal rows of stitches securing the band-inclosing portion to the elastic band while the latter is in a stretched condition.

8. The entire upper rear portion of the body adjacent to the elastic waistband portion being gathered.

And three elements of claim 4 are lacking as follows:

3. The front portion being inelastic and secured to the upper front portion of the body, beginning at the placket and reaching to the opposite side of the body.

4. The rear portion of the waistband being formed of an elastic band and an integral extended portion of the rear of the body.

5. The extended body portion inclosing the elastic band and being secured thereto throughout the length of the elastic band and while the latter is in a stretched condition.

The same is true of Exhibits 5 and 6, and, further, these two petticoats do not use a side placket (thus not infringing claim 4 in any event), and have, in addition, plaits or tucks which, it is claimed, are an advantage, because by hand adjustment the garment can be made to fit a woman whose measurement is greater than the elastic stretch of the waist band.

I could continue with the elaboration of details, for in cases of this kind the subject-matter lends itself to more or less small similarities or differences; but, after all, the controversy must be decided upon the basic proposition that, if the scope of the patent is broadened, it must fall under the prior art, and therefore, if held to its true limits, it cannot catch in its net another device which clearly avoids the terms of the claims.

As applied to Exhibits 3 and 4, it may be urged that this is a narrow view; but, desirable as is the recognition of invention, it is equally desirable that in a busy work-a-day art, the competitive field should not be limited by extending to the claims of a patent a scope which was never intended, and more especially where the contrivance, though successful, has by no means revolutionized the art.

The bill is dismissed, with costs.